Good morning, Your Honors. Brandon LeBlanc on behalf of the appellant Ronald McGregor. I would ask to reserve two minutes for rebuttal. Thank you. Your Honors, this Court should reverse the District Court's denial of Mr. McGregor's motion to suppress because the officer's forcible, the District Court erred when it concluded that the officer's forcible warrantless entry into Mr. McGregor's sister's home was justified under the emergency aid exception to the Fourth Amendment's warrant requirement. There was no – there were no exigent circumstances nor any other lawful basis upon which to justify the officer's warrantless entry. This – this Court was recently presented with a highly similar factual record in the case of United States v. Nora. In Nora, which – the factual record of which was roughly identical to the facts presented in this appeal, this Court ultimately concluded that there were no exigent circumstances to justify the officer's warrantless in-home seizure of Mr. Nora, and that suppression was appropriate. In Nora, the officers had reason to believe that the home was Mr. Nora's, and here there was no reason for the officers to believe that this was McGregor's sister's home, was there? I would respectfully disagree, Your Honor. In this case, the officers at all times – and when I refer to all times prior to Mr. McGregor entering the home, the officers observed Mr. McGregor roughly in front of, according to Officer Benzinger, where he first saw Mr. McGregor, and the other officers saw him essentially in front of the home or very nearby during the entire 10 to 15 seconds before he began to head up the steps into the home. In other words, he was basically right at the steps or very close to being in front of the home the entire time. Was he on the property of the home, though, or was he on, like, a sidewalk near the home? He was on the sidewalk in front of the property, Your Honor, but at the time that when Officer Benzinger attempted to contact him and Mr. McGregor reportedly fled into 152 Harbor, he headed up the steps and acted with familiarity. He opened the door. He appeared – he didn't knock. He appeared to know that he didn't need a key or that the door was locked. He opened it, went inside, and shut the door. At all times, he was – and I think if the court were to refer to the record at around 573, there are photographs of the apartment and the area outside the home. And it would show that, consistent with the testimony at the evidentiary hearing, that at all times Mr. McGregor was essentially right in the home, which obviously in an apartment setting it's a little different. You don't have a yard. You're going to be – for someone to – the officers had perhaps a little less information here, but based upon what they knew, the officers could have and should have reasonably inferred that Mr. McGregor was right in the home. He also – Well, okay. Go ahead. I'm sorry. I didn't mean to. He also had other – I think there's also a very reasonable inference here, Your Honors. For him to have headed up to the steps, up the steps to 152 Harbor, there were other places he could have ran. And I think it's reasonable to think that if someone's trying to get away from officers, it's common sense that they're not going to run up the steps to a single door only to be greeted with a locked door. He would have been stuck at that point. Even then, once the officers got to the door themselves, they heard no calamity inside. There was no screaming to suggest that someone had just bolted into the home and surprised the residents and that there was some sort of fracas happening. Rather, the officers headed up to the door themselves and began pushing on the door. Officer Rivera began – Okay. I didn't mean to interrupt you. Finish the facts. Well, Officer Rivera began sort of pushing on the door and felt pressure on the other side, suggesting that someone was trying to hold the door closed. Once he essentially forced the door open, it wasn't Mr. McGregor who had been holding the door closed. In fact, it was a female, Ms. Clark, Mr. McGregor's sister, the main tenant of the home. She was the one who was trying to barricade the door, essentially. I think at that point, I mean, it should have been imminently apparent that he was welcome in the home. The district court did its analysis based upon the fact that Ms. Clark didn't, at that point, announce to the officers that she resided there. But nor did the Did she know that they were officers? Well, the officers were in plainclothes, and all of them testified that they had their department badges right at the door. When she was closing, when she was holding the door? She did not know. She testified at the evidentiary hearing that she never heard any noise or screams that there were police coming in the door or outside before she – Well, I guess you don't have to have probable cause. They didn't have to have probable cause. Under the emergency aid exception, that's correct. Under the emergency. And all they needed was a reasonable basis. Is that right? That's correct, Your Honor. They needed an objectively reasonable basis to believe that an imminent harm was about to occur, that life or a limb was threatened. That is, that he was – that a person that they suspected of having a weapon was in an apartment with – had run into an apartment where he might be a danger. That's correct, Your Honor. And I think if we go back to Nora, there may have been a slightly stronger inference that Mr. Nora had a relationship to the home. But I think the information – I think it's a marginal difference that doesn't make much of a distinction and should not compel a difference in terms of the outcomes – outcomes of these two cases. The officers here had observed Mr. McGregor for 10 to 15 seconds. He engaged in a few furtive movements during that period of time. They were suspicious of him. Officer Bensinger testified that before he attempted to contact him, he didn't contact Mr. McGregor. He didn't even think they had enough to legally detain him to a terrorist stop, basically, an investigatory stop. But once Mr. McGregor allegedly grabbed at his coat in a nondescript bulge, which could have been a firearm or contraband of some sort, according to the officer thought – Officer Bensinger thought that that was a security adjustment that was consistent with someone checking for a firearm. But at that point, Mr. McGregor headed into the apartment. He ran into the apartment, right? That's – that was the testimony, Your Honor. Absolutely. And the district court made that finding, that he had fled into the apartment. But if you put this side by side with the case of Nora, in Nora, they saw Mr. Nora with what they perceived to be a loaded semi-automatic firearm in his hand before he ran into the home along with one of the other individuals who was with him. They turned off the lights, and the officers surrounded the home. They called in the SWAT and the helicopter and basically seized him in his home. This court said that there was no – that Nora didn't present the kind of immediate threat to the safety of the officers or others necessary to justify a disregard of the warrant requirement. And the court's – the court reasoned that, one, at the time that he entered the home, at most the officers had probable cause to arrest him for would have been a misdemeanor for carrying a loaded firearm in a public place because they – there was a reasonable inference that Mr. Nora possessed the firearm on the sidewalk before he proceeded on to the porch and gone into the home. Here, at most, the officers had probable cause to arrest Mr. McGregor for would have either been a violation of California Penal Code 148A1, resisting a police officer, which all the officers in this case testified that's what they thought the crime he had committed was. And then the government, in its briefing, said, well, another version, another alternative crime that he – the officers may have had probable cause to arrest him for was a violation of California Penal Code 2500 – 25400, which is essentially carrying a concealed firearm. Even that offense is just a misdemeanor based upon what the officers knew. And so at the time that Mr. McGregor entered the home, at most the officers had to arrest him for was a misdemeanor offense. And this Court said a fleeing misdemeanor will rarely, if ever, essentially, or seldom, if ever, justify a warrantless entry in violation of the Fourth Amendment. That's what the Court said in Nora. I think the same should absolutely be said here. The Court went further in Nora and said that in support of that rationale, Nora never aimed the weapon at the officers or anyone else. He never basically demonstrated any aggression or any reason to believe – any effort to essentially pose a danger to the officers or anyone else in the area. He had no reason to believe that he was going to ambush the officers. In this case, the district court seemed to think that he credited the officers' testimony that they thought Mr. McGregor might enter the home and somehow set up an ambush, and they had to move fast, and they couldn't have not because time was of essence. I think I'd pause here and reserve my remaining time for rebuttal. Roberts. Certainly, Mr. LeBlanc. Thank you. Boytz, and I represent the government. This Court should affirm defendant's conviction in sentence, first because the officer's sister's apartment was justified under the emergency exception, and second because defendant's convictions for grand theft from a person qualify under this Court's case law as violent felonies under ACCA's residual clause. If I might begin by addressing the question of Nora's impact on this case. First, with respect to Nora, Nora dealt solely with exigency as opposed to the emergency exception. Second, as this Court has already pointed out, in Nora there was a reason to believe that the defendant in that case was associated with the home into which he went. When they saw him, he was inside the yard, which was fenced in. He was standing on the porch with a number of other individuals before he went into the house. By contrast, here the district court made a factual finding, which this Court reviews for clear error, that there was no reason to believe the defendant in here, for the officers to believe the defendant had a connection to the apartment in this case. In fact, his behavior before he went in did not suggest that he was going to 152. When he saw the officers, he turned around, he took a stutter step in the other direction, he hunched down as if he was trying to hide something. And again, these are all findings of fact made by the district court. Before turning around, when the officers hailed him, he then engaged in what the court found was headlong flight up the stairs. And if the Court looks at the photographs in this case, given where the defendant was positioned at the time, the stairs were the closest place for him to go. The defendant points out that there was another apartment on the ground floor, but that door was behind the stairs. So the defendant would have had to go around the stairs and back to get to that door. The defendant didn't use a key. And when they -- How do you respond to the argument, though, that the fact that he didn't he seemed to not even think he needed a key suggests that he knew that this apartment was unlocked? I think under the circumstances, the officers simply saw him go and they didn't see a key, so they couldn't know if he entered that quickly because he simply got lucky or that he knew it. And that's a sort of split-second decision that we – that the courts have asked or have tried not to second-guess because of the circumstances and because of the risk, as the district court found, that if they make the wrong decision, someone gets hurt. Can you – the district court said that – the district court held an evidentiary hearing. Correct. And it said that it was resolving factual issues. What were the conflicting factual versions that the court was resolving here? I believe that the – to the extent that there was a conflict, it was over what happened initially. There was some dispute, I believe. The defendant himself didn't testify as to the events beforehand, but there was a dispute over what happened when he came in, when the officers went into the apartment. Okay. You mean whether or not he ran through or what? No. There was some dispute as to whether – well, defendant's sister testified that she did not hear – that she did not hear them shout, police, but the district court credited that, in fact, the officers did announce that they were police as they were going up. There was some dispute over the extent to which the officers could see, given that it was at night. But again, the district court credited that in light of the fact that the officer's car, the headlights were on defendant, defendant was standing under a streetlight, that they were able to observe him. And there was some dispute about whether he could have known that they were police. And again, the district court credited that they were driving a Crown Victoria, which is recognized as a police car, and that they were wearing badges. So those essentially were the issues. As to whether or not he was running away from police. Correct. Okay. Whether he knew that they were police. Or knew that he was running away. Correct. And then there was a dispute over the government needed to prove that they observed a bulge and that he made a gesture, again, the district court credited, that was consistent with someone securing a gun before they run. And in light of all of those facts, his behavior when he saw the officers, his headlong flight up the stairs, the fact that as the district court found, they could not know that he belonged to this apartment, this takes this out of the Nora circumstances and renders this case one where it was reasonable for the officers, given the totality of the circumstances, to go into the apartment. I'd like to address a second argument the defendant makes, which is that they should have recognized as soon as they entered in the apartment, in a matter of split seconds, that the defendant was, in fact, welcome there. But what the officers saw, first they came up and the door was blocked. They didn't know by whom, they didn't know why. They opened the door, the defendant's sister's there, but they don't know that she's his sister. Neither he nor anyone else in the apartment says something to indicate that he belongs there. And, in fact, at that point, the defendant was fleeing out the back door, none of which would suggest to the officers that they should stop and return. More of that is inconsistent with this Court's case law in Johnson, which says that exigency is measured as of the time of entry. And as the district court found, once they entered, their actions were reasonable. They didn't search the apartment. They went through, they pursued the defendant when he was cornered and threw away the gun. Then they brought him down and he was subsequently arrested. In light of that, we would submit that this Court should affirm, because the district court's determination that this was justified in the totality of the circumstances, is supported by the record. And if this Court has no further questions, I would be happy to submit. Thank you very much. Roberts. I'll be very brief with my final comments. I did want to respond to the government's argument that Nora was an exigency case. I think it's important to note that while Nora did its analysis under sort of the name of exigency, the considerations that the Court applied in Nora are actually invoking the emergency aid exception, which is not uncommon. And emergency aid is essentially just part of the, sort of under the same exigency umbrella term. The Court, when it talked about why Mr. Nora was not a threat to the officers or any unknown occupants, this Court was focused on Mr. Nora's non-aggressive behavior, that he hadn't threatened the officers, that he, the officers had no reason to think that he intended to harm anyone, that there was no basis to believe that he was a threat to life and limb. That's invoking the emergency aid exception. So although the Court in Nora, I think, was referring to it as exigency, I think it's, the analysis tracks an emergency aid exception invocation. I think the second point just returns to Judge Friedland's question about the relationship between Mr. McGregor and the home. I think here, again, he acted with familiarity in terms of how he entered the home. He was always in the immediate vicinity, either directly in front of the home or very near the base of the steps. He entered without a key, appeared to know he didn't need a key, that the door would be unlocked. And at a minimum, once the officers forced their way open, and let's not forget, in the process, they did, the door did hit Mr. McGregor's sister, who was pregnant, hit her in the head. It was a forcible entry. If they saw Mr. McGregor on the other side of the room, it should have been immediately apparent at that point that he was a welcome guest there, and that this was an unlawful entry. How do you respond to the argument that it doesn't really matter what happened once they were in the door? I mean, isn't the real question whether they should have gone in? And so what happens beyond that is a lot less relevant to our question about whether there was an emergency? I'm sorry, Your Honor. So it seems to me that the real question is, should they have gone into the apartment? What happened once they were inside seems less important to me. Do you disagree with that? I do, to the extent, Your Honor, I do think that they should not have gone into the apartment. That was unlawful. And they compounded that initial unlawful entry by then actually entering the apartment after they should have. It should have been immediately apparent that Mr. McGregor was welcome there. I thought that your argument was, okay, that you're not arguing that they should have gotten a warrant once they saw him go into the apartment. I think that would have been the preferable course of action. This Court in Nora, the officers didn't do that. They certainly surrounded the home and they eventually, they did less of an intrusion in the home in Nora than what happened here. And I think in both cases, it would have been appropriate to pursue a warrant first. Thank you very much, counsel. Good to see you again, Judge. The matter is submitted.
judges: SCHROEDER, OWENS, FRIEDLAND